IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>V.<br><br>TREMONT BLAKEMORE | NO.  3:19-CR-531-E |

**RESPONSE IN OPPOSITION TO DEFENDANT'S
<u>MOTION FOR TEMPORARY RELEASE</u>**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby responds in opposition to defendant Tremont Blakemore's Motion for Pre-trial Release/Home Confinement (the "Motion"). [1] (Dkt. 61.) The defendant's single page motion requests that he be temporarily released on bail pending trial pursuant to 18 U.S.C. § 3142(i),[2] but cites no facts or law.  Rather, the defendant relies on (1) the prospect that he will contract COVID-19 while at the facility where he is being detained;[3] and (2) conjecture that the COVID-19 pandemic will prevent the

---

[1] In the defendant's Certificate of Conference (Dkt. 61, p.2), defense counsel states he "conferred with MELANIE SMITH the Assistant United States Attorney assigned to this case and she is opposed to this motion."  Defense counsel did not confer with the government in regards to his motion.  The first time the government was made aware of such motion was when it received an ECF notification.  However, the defense counsel is correct that the government opposes his motion for pre-trial release.

[2] The defendant does not specify under which statute or legal authority he is seeking pre-trial release, but the government assumes, and will proceed, under the theory that he is moving pursuant to 18 U.S.C. § 3142(i).

[3] Beyond citing the number of infected inmates and staff as of July 22, 2020, the motion makes no arguments as to why that would merit the defendant's pre-trial release.  The government surmises the defendant is arguing that given the rate of COVID-19 infections at Seagoville, the defendant should be released to prevent possible infection before his October 26, 2020 trial date.

defendant from participation in the preparation of his defense for trial.  As neither of these arguments warrants release, the defendant's motion should be denied.

1.     **FACTUAL AND PROCEDURAL BACKGROUND**

On September 11, 2019, the defendant was arrested pursuant to a one-count complaint for sex trafficking through force, fraud, and coercion, in violation of 18 U.S.C. § 1591(a)(1) and (b)(1).[4]  The government moved for pretrial detention, citing the rebuttable presumption under 18 U.S.C. § 3142(e)(3)(D) that "no condition or combination of conditions will reasonably assure the appearance of [the defendant] as required and the safety of the community."  (*See* Dkt. 7.)

On September 16, 2019, a detention hearing was held in front of Magistrate Judge Ramirez.  During the hearing, the government presented testimony through Homeland Security Investigations Special Agent (SA) John Jones.  SA Jones testified that the defendant is the head of a massive human trafficking organization (HTO) that, since around 2011, has trafficked hundreds of victims and spanned multiple states.  Throughout the operation of the HTO, Blakemore used force, fraud, fear, intimidation, and coercion to compel victims to perform commercial sex acts, the proceeds for which he kept entirely.  Victims described closed-door beatings, strict rules about who they could talk to and how they could spend money, and a culture of fear in which Blakemore insisted on loyalty to him above all else.

---

[4] The defendant was indicted on October 9, 2019 on seven counts of sex trafficking through force, fraud, and coercion, in violation of 18 U.S.C. § 1591(a)(1) and (b)(1).  (Dkt. 17.)

In addition to the egregious nature of the offense, SA Jones also testified to the potential for witness tampering, noting that the defendant has been known to contact former victims to dissuade them from cooperating with law enforcement and has contacted victims through social media to let them know he still knows where they are. The defendant even showed up at the workplace of one victim.

Finally, testimony at the detention hearing also confirmed that the defendant could not be trusted on conditions of release, as SA Jones detailed the defendant's continued criminal activity while out on state bond.  Specifically, in September 2018, the defendant was arrested by the Dallas Police Department for human trafficking related charges, including Engaging in Organized Crime, Aggravated Promotion of Prostitution, Money Laundering, Tampering with Physical Evidence, and Compelling Prostitution. Blakemore was held in custody until approximately December 21, 2018, when he was able to post state bond.  On or about December 27, 2018, Blakemore was released from custody on electronic monitoring and home confinement.

However, Blakemore refused to comply with his state conditions of release; instead, Blakemore continued to engage in criminal conduct identical to that for which he stands charged.  According to evidence obtained from Blakemore's Facebook page, even while out on electronic monitoring, Blakemore continued to groom and recruit victims to participate in the commercial sex industry.  He also corresponded about a cooperating victim.  Finally, when a search warrant was executed at the time of his arrest on federal charges, two young women were found there, and one gave information consistent with the pattern of grooming used on previous victims.

Judge Ramirez found that based on the agent's testimony, the pretrial report, and the factors listed in 18 U.S.C. § 3142(g), the defendant had not rebutted the presumption of detention, and alternatively, that the government had met its burden to establish by clear and convincing evidence that there was no condition or combination of conditions of release that could be set which could reasonably assure the safety of the community or his appearance in court. (Dkt. 13, p. 1-2.) Judge Ramirez based her decision on the nature and circumstances of the offense; the weight of the evidence against the defendant; the characteristics of the defendant, including continued activity of the same nature as that for which he is facing charges; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. (Dkt. 13, p. 3.)

On July 22, 2020, the defendant filed the instant Motion, citing the need to review discovery with his defense counsel which he is allegedly unable to do because of COVID-19. (Dkt. 61.) The defendant also listed the number of COVID-19 infections at FCI Seagoville as part of his Motion. The case is set for a jury trial on October 26, 2020.

## 2.  STANDARD OF REVIEW

A defendant should not be released pending trial if a judicial officer determines that "release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). "[T]he lack of reasonable assurance of either the defendant's appearance or the safety of others or the community is sufficient; both are not required." *United States v. Fortna,* 769 F.2d 243, 249 (5th Cir. 1985) (citation omitted). A determination that no condition or combination of conditions will prevent the risk of

4

flight must be supported by a preponderance of the evidence. *See United States v. Trosper*, 809 F.2d 1107, 1109 (5th Cir. 1987). A determination that no condition or combination of conditions will assure that the defendant does not pose a danger to a person or the community must "be supported by clear and convincing evidence." 18 U.S.C. § 3142(f).

Courts should consider the following factors in determining whether a person poses a flight risk or a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *see also United States v. Acosta-Leyva*, 751 F. App'x 594, 595 (5th Cir. 2019).

Further, where, as here, there is probable cause to believe that the defendant committed an offense under 18 U.S.C. § 1591, a rebuttable presumption exists that "no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(B). And even if the defendant presents "evidence tending to rebut the presumption," the presumption "nevertheless remains in the case and is a factor to be considered." *Fortna*, 769 F.2d at 251.

If, after going through the above factors and determining that the defendant should be detained, "[t]he judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of the United States marshal or another appropriate person, to the extent the judicial officer determines such release to be necessary for

5

preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The defendant bears the burden of showing that his temporary release is necessary, and the facts surrounding the underlying reasons for the defendant's detention are relevant to the analysis. *United States v. Bushwell*, No. 11-CR-198, 2018 WL 210899, at *5 (W.D. La. Jan. 18, 2013); *see also United States v. Clark*, No. 19-40068, 2020 WL 1446895, at *1 (D. Kan. Mar. 25, 2020) (holding that, "[o]n balance, [the defendant had] not shown a sufficiently compelling reason that his release is necessary, particularly in light of the court's prior finding that he is a flight risk and a risk of harm to others"); *United States v. Cox*, No. 219-CR-271, 2020 WL 1491180, at *2 (D. Nev. Mar. 27, 2020) (emphasizing that, in considering the propriety of temporary release, the court needs "to balance the reasons advanced for such reason against the risks that were previously identified and resulted in an order of detention").

3.  **ARGUMENT AND ANALYSIS**

    A.  **Defendant is both a danger to the community and a flight risk and should be detained.**

The defendant's motion, which focuses only on the presence of COVID-19 in his facility, fails to address the factors that this Court must consider in determining whether a defendant should be detained pending trial. Those factors strongly support the defendant's continued detention.

As an initial matter, the government is invoking the rebuttable presumption that no combination of release conditions will assure the safety of the community under 18

6

U.S.C. § 3142(e).  *See* 18 U.S.C. § 3142(e)(3)(A).  The defendant has not even attempted to overcome that presumption.  Nor can he for the reasons set forth below.

### i. Nature and circumstances of this offense (§ 3142(g)(1))

The defendant has been the leader of a large HTO since 2011.  In that almost ten year period, he victimized hundreds of women.  The defendant maintained strict control over the HTO and his victims' activities.  He required regular updates from his victims via text message when they were completing commercial sex acts and all proceeds of the commercial sex acts were given to him.  The defendant required his victims to go on "work trips" in which they traveled to complete commercial sex acts at his direction.  They traveled throughout Texas and all over the country, to include places such as Colorado, California, New York, Florida, Maryland, South Carolina, and Louisiana.  The defendant required absolute loyalty from his victims, and his victims describe his method of branding them with a tattooing bearing his nickname, "Macknificent."

Victims describe him physically abusing them by, among other things, slapping them, punching them, and pulling them out of rooms by their hair.  Numerous victims describe an incident in which a victim stated that she wanted to have a normal life someday.  When the defendant found out about her comment, he beat her and slammed her into an air conditioning unit, breaking a vertebrae in her break, in front of the other victims.

The defendant has been the target of both federal and state investigations in the past, but it did not curtail his criminal activity.  The defendant was well aware of the criminal investigations, and even had search warrants executed at his Florida residence

back in 2016. Then, when he was arrested and charged with human trafficking-related charges by Dallas County in September 2018, the defendant continued to engage in human trafficking while on house arrest. The defendant not only continued to have victims complete commercial sex acts at his direction, he also actively recruited new victims on social media.

This case involves very serious and dangerous criminal activity and the potential punishment range reflects that. The defendant is currently charged with seven counts of sex trafficking, in violation of 18 U.S.C. § 1591. Each count carries a 15 year mandatory minimum sentence and if the defendant goes to trial and is convicted, his sentencing guidelines are life in prison.

### ii.     Weight of the evidence (3142(g)(2))

The weight of the evidence against the defendant is strong and substantial. Beyond the seven victims identified in the indictment, additional victims are cooperating with law enforcement. The victims span multiple years and many of them do not overlap in the time period in which they were with the defendant. Despite this, their stories are eerily similar and they tell the same story of control and physical and mental abuse. Their stories are corroborated by text messages and photos found on their cell phones and the defendant's multiple cell phones. Further evidence of the defendant's crimes are found through social media accounts, bank records, and travel records.

### iii.    Defendant's history and characteristics (3142(g)(3))

The defendant has a long and storied history with law enforcement and its attempts to stop his trafficking of women. Despite knowing that he was being

investigated by multiple agencies in multiple states, the defendant continued to traffic young, vulnerable women. The defendant used them to support his extravagant lifestyle of luxury cars, jewelry, and clothing. Not only that, but when he was finally arrested by Dallas Police on sex trafficking-related charges, he continued to run his HTO. By his own actions, the defendant has shown that there are no conditions or combination of conditions that will ensure the safety of the community. He was given that chance at the state level and failed miserably.

> iv. **Nature and seriousness of the danger to another person or the community posed by release (3142(g)(4))**

The defendant is a substantial danger to his victims and to the community at large. The defendant has made his livelihood by preying on vulnerable women and making them engage in commercial sex acts to support him. There is a real danger the defendant will continue to traffic women if released pending trial. And the defendant's actions while out on state pretrial release only serve to support that contention. Further, there is also evidence of the defendant attempting to engage in witness tampering by reaching out to his victims. Witness tampering is a significant problem in human trafficking cases and the defendant has already shown that when given the chance, he will engage in such criminal behavior.

> B. **Officials have established comprehensive measures to avoid—and, if it becomes necessary, address—a COVID-19 infection.**

The defendant's motion for release appears to be premised on the health risks he might face from a COVID-19 outbreak. But the existence of a pandemic, in and of itself, cannot be used by any and every defendant to avoid pretrial detention, especially in the

9

circumstances here.  Even if contracting COVID-19 is, unfortunately, more likely, courts have commonly rejected such arguments because the general prospect of infection by the novel coronavirus and the temporary precautions implemented by the facility do not supersede the statutory considerations of 18 U.S.C. § 3142 that warrant detention in this case.  *See, e.g., United States v. Martin,* No. PWG-19-140-13, 2020 WL 12748557, at *3 (D. Md. Mar. 17, 2020) (denying relief and noting that, "as concerning as the COVID-19 pandemic is, resolving an appeal of an order of detention must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act").

The defendant does not claim to be infected by COVID-19 such that he might be a danger to other prisoners.  *See* 18 U.S.C. § 3142(e)(2) (directing the court to consider the safety of "any other person and the community").  Neither has the defendant presented any evidence that would suggest he has a pre-existing health condition that would make him particularly vulnerable if he were to contract COVID-19.  Instead, the defendant appears to rely on the speculative possibility that another person might cause him to become infected.  The defendant asserts that 1,072 inmates and nine staff have tested positive at FCI Seagoville.  (Dkt. 61, p.1.)  However, the BOP website now reports only 35 inmates and four staff are infected with COVID-19.[5]  Thus, from simply looking at the numbers, it appears FCI Seagoville has been able to contain the spread of COVID-19.

The BOP, as a whole, has taken great lengths to help prevent the spread of COVID-19 and has been planning for potential COVID-19 transmissions since January

---

[5] The BOP lists the number of confirmed cases at https://www.bop.gov/coronavirus/.  The website was last visited on August 13, 2020.

10

2020. On March 13, 2020, BOP announced that it was implementing the Coronavirus (COVID-19) Phase Two Action Plan in order to minimize the risk of COVID-19 transmission into and inside its facilities. It has continued to modify is operation plans as needed to mitigate the spread of COVID-19. Its updated plan provides for the following: screening of inmates and staff, suspension of social visits, tours, and legal visits, restricted movements, staff training and suspension of travel for staff.[6] The defendant's speculative concerns that holding facilities cannot adequately contain the spread of the virus should not be able to trump the careful balance of factors prescribed by Congress in determining whether he is properly subject to pretrial detention. *See, e.g.*, *Martin*, 2020 WL 1274857, at \*3.

    **C.**    **The existence of COVID-19 does not justify releasing defendant.**

While the COVID-19 virus is new, health-related claims by detainees are not. Courts have generally recognized that (1) "it is a rare case in which health conditions present an 'exceptional reason'" to allow for release where otherwise detention would be warranted, *United States v. Wages*, 271 F. App'x 726, 728 (10th Cir. 2008), and (2) reasonably necessary treatments are available in prison, and often times a prison setting will provide superior care than a defendant can obtain on the outside, *United States v. Rodriguez*, 50 F. Supp. 2d 717, 722 (N.D. Ohio 1999).[7] In this instance, the defendant

---

[6] The BOP Implementing Modified Operations plan is available at: https://www.bop.gov/coronavirus/covid19_status.jsp.

[7] *See also United States v. Stanford*, 722 F. Supp. 2d 803, 813 (S.D. Tex. 2010) ("As the United States points out, Stanford is not the first pretrial detainee to suffer health issues. The FDC is well equipped to provide appropriate medical attention to detainees who may require it. Moreover, Stanford cites no case in which a defendant detained pending trial was entitled to release from detention because he may have suffered infirmities while detained.").

11

has not put forth any medical information or records to suggest that he has a pre-existing condition or other health issue that makes him particularly high-risk when it comes to possible COVID-19 infection.

Regardless, many courts have held that generalized concerns about the risk of infection by the novel coronavirus do not outweigh the statutory flight and safety factors that counsel in favor of detention. *See, e.g.*, *United States v. Kerr*, No. 3:19-CR-296-L, 2020 WL 1529180, at *3 (N.D. Tex. Mar. 31, 2020) ("Defendant has not demonstrated why his speculative concern about an outbreak arises to an exceptional circumstance as contemplated under Section 3145(b).") (citing cases); *see also Smoot*, 2020 WL 1501810, at *3 ("The mere possibility of an outbreak at his facility does not equate to a compelling enough reason to justify his release.").

Further, courts use temporary release under section 3142(i) "sparingly," *see United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020), and with respect to medical care, only for a particular detainee's immediate and specific medical needs much more dire than a generalized concern of future viral infection, such as when the detainee has dire medical needs that cannot be addressed in the facility. *See United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *2 (D. Kan. Mar. 25, 2020) (discussing cases). Even then, courts have required armed security during the term of release. *Id.*

Nor is temporary release necessary for the defendant to prepare a defense. Court assessing claims of necessity have considered: "(1) the time and opportunity the defendant has to prepare for the trial and participate in his defense, (2) the complexity of

12

the case and volume of information, and (3) expense and inconvenience associated with preparing while incarcerated." *Cox*, 2020 WL 1491180, at *5 (internal quotation marks omitted). The defendant has not established that his defense necessitates his release. Although facilities have implemented measures to reduce face-to-face contact—which includes legal visits—they recognize the importance of legal consultation and are currently implementing measures to enable confidential consultations as needed.[8] The defendant has not demonstrated any upcoming deadline or court requirement that he will be unable to satisfy through the available means of communication.

Finally, awarding the defendant the relief he seeks would cause the Court to be flooded with similar, generic requests. Each defendant would make the same argument and claim that the prospect of contracting COVID-19 justifies relief—regardless of their risk of flight or threat to the community. *See Kerr*, 2002 WL 1529180, at *3; *United States v. Fitzgerald*, No. 2:17-CR-295, 2020 WL 1433932, at *2 (D. Nev. Mar. 24, 2020) ("Defendant's argument applies equally to every detainee in detention; however, the Court cannot release every detainee at risk of contracting COVID-19 because the Court would then be obligated to release every detainee."). The continued detention of this defendant (and those similarly situated) is necessary to ensure public safety and does not endanger public health.

---

[8] *See infra.* n.1.

**4.    CONCLUSION**

For these reasons, the government respectfully asks the Court to deny the defendant's motion.

                                    Respectfully submitted,

                                    ERIN NEALY COX
                                    United States Attorney

                                    */s/Melanie Smith*
                                    MELANIE SMITH
                                    Assistant United States Attorney
                                    Virginia State Bar No. 82663
                                    1100 Commerce Street, Third Floor
                                    Dallas, Texas 75242
                                    Phone:  214-659-8821
                                    Email:  melanie.smith@usdoj.gov

                                    */s/Nicole Dana*
                                    NICOLE DANA
                                    Assistant United States Attorney
                                    Texas State Bar No. 24062268
                                    1100 Commerce Street, Third Floor
                                    Dallas, Texas 75242-1699
                                    Telephone: 214-659-8694
                                    Email: nicole.dana@usdoj.gov